# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ex rel. OMARR CHESTER, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> RANDY PFISTER, Warden, ) <br>  Pontiac Correctional Center, ) <br> ) <br> Respondent. ) | No. 14-cv-8664 <br><br> Judge Ronald A. Guzmán |

## ORDER

Petitioner Omarr Chester's § 2254 Petition for Writ of Habeas Corpus [1] is denied. No certificate of appealability shall issue.

## MEMORANDUM OPINION AND ORDER

Omarr Chester ("Petitioner") was convicted of aggravated hijacking in 2005 after an Illinois state court jury trial. He has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254(b)(1). For the reasons set forth below, the Court denies the petition.

## Factual Background

The following facts are drawn from the Illinois Appellate Court's opinion in Petitioner's direct appeal, *People v. Chester*, No. 1–06–2789 at 2-5 (Ill. App. Ct. Jul. 11, 2008) (Gov't Ex. D, Dkt. # 18.) The Court presumes that the state court's factual findings are correct for the purposes

of habeas review, and Petitioner bears the burden of rebutting such findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

On the night of October 28, 2005, Carl Carter ("Carter") was stopped at a gas station fueling his 1998 Ford Expedition when he was approached from behind by a man in a hooded black jacket. Carter felt something hard pressed into his back, and heard the man say "You know what this is." Upon turning around, Carter looked first at the man's face and then down to the man's hand where he saw a nickel-plated 9 mm handgun. The man demanded the car keys and Carter relinquished them, after which the man sped away in Carter's vehicle. Carter asked a nearby woman to help him follow his car, and the two pursued the vehicle until losing it at a traffic light. While they were following the car, Carter called 911 to report the theft and tell the dispatcher the stolen car's location. Among other possessions that were in Carter's vehicle at the time of the theft was a cell phone bill that included Carter's number.

The next day, Carter received a call on his cell phone from a blocked number. The caller was male, and offered to return Carter's car for $2,500.00. On this call, Carter and the unidentified caller arranged to meet at a gas station to make the exchange. Carter immediately called the police and arranged for detectives to meet him near the spot designated for the exchange. While meeting with the officers, Carter received multiple additional calls from a blocked number and put them on speaker phone so the officers could listen. On these calls the caller was female, and she asked if Carter had the money and reiterated the place he was to go for the exchange. After officers drove around the meeting place and failed to locate Carter's stolen vehicle, Carter himself decided to drive around the area and noticed his car in a parking lot. He called the police and they set up surveillance around the vehicle. A short time later,

officers arrested two men upon seeing them enter the car. Petitioner was the man in the driver's seat and had Carter's keys in his possession. At a lineup that night in the police station, Carter identified Petitioner as the man who had stolen his car keys at gunpoint.

Petitioner was charged with aggravated vehicular hijacking and was brought to trial before a jury. At the start of trial, defense counsel moved *in limine* to exclude a voicemail message left on Carter's cell phone by Petitioner's sister, Nanette. The prosecution responded that it would not offer the call directly, planning only to use it for impeachment if the defense called Nanette as a witness. During the trial, the prosecution called Carter as its only identification witness and also called four police officers involved in the investigation. After the prosecution rested, the defense called 911 dispatcher Allen Lewis and then called Nanette.

Nanette testified that a week after her brother's arrest, she got Carter's phone number from some of her brother's arrest paperwork. She then called Carter, and left a message when he failed to pick up the phone. Carter returned her call the following day, and they had a conversation in which Nanette asked Carter what had happened. At this point in Nanette's testimony, the prosecution objected and a sidebar was held. Defense counsel indicated that Nanette would testify that in this conversation, Carter had told her that he did not see the face of the person who stole his car at gunpoint and had in fact only picked Petitioner out of the lineup based on the clothing he was wearing. The trial court sustained the prosecution's objection and disallowed this testimony, ruling that the proper foundation to impeach Carter with a prior inconsistent statement had not been laid because defense counsel had not questioned Carter about the conversation in question (presumably due to the defense's own pretrial request to bar evidence of the call).

After the close of evidence, defense counsel requested that the jury be instructed on the lesser included offense of possession of a stolen vehicle. The court denied this request, after which the jury found Petitioner guilty of aggravated hijacking. Defendant was sentenced to natural life in prison.

**Procedural Background**

On direct appeal, Petitioner argued that: (1) the trial court failed to give the jury an instruction on the lesser included offense of possessing a stolen vehicle; (2) trial counsel was constitutionally ineffective in failing to ask Carter about his conversation with Nanette and thereby forfeiting potential impeachment material; and (3) the evidence was insufficient to support a conviction because the state's only evidence was a single eyewitness and his testimony was inconsistent. (Gov't Ex. A.) On July 11, 2008, the Illinois Appellate Court affirmed Petitioner's conviction, rejecting all three of his claims on the merits. (Gov't Ex. D.)

Petitioner then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court. This PLA raised only Petitioner's claims relating to ineffective assistance of counsel and the trial court's refusal to instruct the jury on a lesser included offense; Petitioner did not renew his sufficiency of the evidence argument. (Gov't Ex. E.) The Illinois Supreme Court summarily denied Petitioner's PLA on November 26, 2008. (Gov't Ex. F.)

In 2009, Petitioner filed a petition with the Circuit Court of Cook County seeking post-conviction relief.[1] After this petition was denied, Petitioner's appointed counsel moved to withdraw on the grounds that all potential appellate issues would be meritless. (Gov't Ex. G.) Petitioner filed a response, arguing that his insufficiency of the evidence claim was not meritless

---

[1] Petitioner's initial post-conviction petition and any documents showing the Circuit Court's ruling on it are not included in the state court record submitted by the government. However, these documents are not necessary for purposes of deciding the instant habeas petition and the Court therefore proceeds without them.

and that he had meritorious grounds for relief relating to the unavailability of grand jury transcripts. (Gov't Ex. H.) The Illinois Appellate Court permitted the withdrawal of Petitioner's appellate counsel and affirmed the denial of Petitioner's post-conviction petition. (Gov't Ex. I.) Petitioner filed a pro se PLA to the Illinois Supreme Court, reiterating only his argument that the evidence was insufficient to sustain his conviction. (Gov't Ex. J.) This PLA was summarily denied on September 24, 2014. (Gov't Ex. K.)

On October 29, 2014, Petitioner filed this pro se federal habeas petition arguing that: (1) his trial counsel was constitutionally ineffective, because counsel: (a) failed to lay the foundation necessary to impeach Carter with his prior inconsistent statement to Nanette, and (b) failed to challenge the sufficiency of the evidence; (2) the trial court's refusal to instruct the jury on the lesser included offense of possession of a stolen vehicle violated Petitioner's right to due process; and (3) the evidence was insufficient to support his conviction. (Pet. Habeas Corpus, Dkt. # 1.)[2]

**Legal Standard**

The role of a federal court in reviewing habeas applications by state prisoners is delineated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which was enacted to limit federal habeas review. *See Williams v. Taylor*, 529 U.S. 362, 403-04 (2000) (noting that in enacting AEDPA, "Congress wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law"). The ruling this

---

[2] After the government responded to the petition on January 9, 2015, Petitioner failed to file a reply brief by the February 9, 2015 deadline. The Court *sua sponte* granted Petitioner an additional 30 days to reply. (Dkt. # 20.) Petitioner having again failed to file a reply or indicate an intention to do so, the Court must rule on his habeas petition without the benefit of a reply.

Court reviews is that of the last state court to rule on the merits of Petitioner's claims. *See Suh v. Pierce*, 630 F.3d 685, 690 (7th Cir. 2011).

Under AEDPA, a state prisoner is entitled to habeas relief only if the state court's ruling on his federal claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Under the "contrary to" prong of this test, a federal court may issue a writ of habeas corpus only if the state court applied a rule different from the governing law set forth in the relevant United States Supreme Court's precedent, or if the state court decides a case differently than the Supreme Court has already done on materially indistinguishable facts. *See Williams*, 529 U.S. at 405-06. Under the "unreasonable application" prong, a federal court may only provide habeas relief if the state court correctly identified the governing legal principle but applied that principle to the facts in an unreasonable way. *Id*. at 407-08. This is an objective inquiry; if the state court's application of the law is such that "fairminded jurists could disagree," habeas relief is precluded. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under either prong, a petitioner bears the burden of demonstrating that he or she is entitled to the relief sought. *See Woods v. Visciotti*, 537 U.S. 19, 25 (2002). The state court's findings of facts are "presumed to be correct," and such presumption can only be rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Moreover, a federal court may address a petitioner's claims on the merits only if such claims are not barred by procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There are two general cases in which a claim is barred by procedural default: (1) where a petitioner failed to fairly present a federal constitutional issue in the state courts first, *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996); and (2) where a state court has rejected a

petitioner's claim on an adequate and independent state procedural or substantive ground, *Coleman*, 501 U.S. at 729-30. A petitioner may be excused from a procedural default if he or she can show cause for the default and prejudice arising from it. *See Schaff v. Snyder*, 190 F.3d 513, 526 (7th Cir. 1999). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which hinders the petitioner's ability to pursue a claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## **Discussion**

For the following reasons, Claim 1(a) (ineffective assistance of trial counsel in failing to lay the foundation for Carter's inconsistent statements to Nanette) fails on the merits. Claim 1(b) (ineffective assistance of trial counsel for failing to challenge the sufficiency of the evidence) and Claim 2 (failure of the trial court to instruct on a lesser included offense) are procedurally defaulted. Finally, Claim 3 (insufficiency of the evidence) fails on the merits.

## CLAIM 1: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Ineffective assistance claims are evaluated using a two-pronged test: (1) whether counsel's performance fell below the objective standard of reasonable representation under the circumstances, and (2) whether there is a reasonable probability that, but for the errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984). Where a petitioner's claim fails under either of the prongs, the court may reject his claims on that basis and need not address the remaining prong. *See Milone v. Camp*, 22 F.3d 693,

703 (7th Cir. 1994) ("The Court need not address both *Strickland* prongs if it is clear that [Petitioner] cannot satisfy one of them").

**Claim 1(a): Failure to lay foundation for impeaching Carter with Nanette's testimony**

Petitioner's first ground for relief is that trial counsel was ineffective because counsel knew about the alleged conversation between Nanette and Carter in which Carter admitted to not seeing the thief's face, yet counsel "failed to lay the proper foundation for admission of that prior inconsistent statement." (Pet. Habeas Corpus, Dkt. # 1 at 5.) The Illinois Appellate Court was the last court to reject this claim in a reasoned opinion in hearing Petitioner's direct appeal, and correctly identified the *Strickland* standard for ineffective assistance. (Gov't Ex. D, *People v. Chester*, No. 1–06–2789 at 10 (Ill. App. Ct. Jul. 11, 2008).) Accordingly, Petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable way. The Illinois Appellate Court held that defense counsel's failure to lay the foundation for the impeachment evidence did not fall below an objective standard of reasonableness. (Gov't Ex. D, at 11.) The court concluded that counsel could reasonably have believed that the conversation between Nanette and Carter would do more harm than good and moved to exclude it before trial, eliminating any possible foundation for later impeachment of Carter.

This holding was not objectively unreasonable under *Strickland*. Nanette was Petitioner's sister, and this fact may have led jurors to doubt the credibility of her testimony as to Carter's statements. Moreover, the impeachment value of Nanette's testimony had to be weighed against the extremely suspicious circumstances of the phone call she would have testified to. Nanette admitted to having gotten Carter's number from Petitioner; because Carter's vehicle contained

documents with his cell phone number, Petitioner's possession of Carter's number could have suggested to the jury that Petitioner was in fact the carjacker. Even more troubling from defense counsel's standpoint was the fact that an unidentified female caller had attempted to ransom Carter's car back to him prior to Petitioner's arrest. Under such circumstances, defense counsel would hardly be unreasonable in trying to bar evidence of one of Petitioner's female relatives having placed calls to Carter. Finally, the appellate court found that trial counsel had "challenged the credibility of the identification witness through competent cross-examination" of all the prosecution witnesses as well as through direct examination of the 911 dispatcher. (*Id.* at 13.) Given the availability of these far less dangerous methods of impeachment, counsel could reasonably have concluded before trial that the circumstances of Nanette and Carter's conversation were simply too damaging to put before the jury. *See United States v. Curtis*, 742 F.2d 1070, 1075 (7th Cir. 1984) (holding that failure to call impeachment witnesses who were implicated in the crime and/or related to defendant was not deficient performance). The fact that defense counsel appears to have regretted this decision during trial and called Nanette to testify about the call anyway does not render the initial decision to exclude the testimony objectively unreasonable at the time it was made.

Because the state appellate court reasonably attributed the decision not to bring up Nanette's testimony to sound trial strategy rather than incompetence, its conclusion that trial counsel was not ineffective was a reasonable application of *Strickland*.

**Claim 1(b): Failure to challenge the sufficiency of the evidence**:

Petitioner also contends that trial counsel was ineffective for "failing to challenge the sufficiency of the evidence that Petitioner was armed with a dangerous weapon." (Pet. Habeas Corpus, Dkt. # 1 at 5.) The government argues that this ground is procedurally defaulted, because Petitioner failed to raise it before any of the Illinois state courts at any stage. To escape procedural default, an issue raised in Illinois state court must be submitted for "one complete round" of the state review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A review of the state court record reflects that Petitioner never raised this ground for relief in either his direct appeal proceedings or his post-conviction proceedings. Accordingly, this claim is procedurally defaulted.

A habeas court may reach the merits of a claim which would otherwise be unreviewable due to procedural default if one of two exceptions applies. A claim may fall within the "cause and prejudice" exception if a petitioner show that an "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule" and also demonstrates actual prejudice resulting from the alleged violation of federal law. *Strickler v. Greene*, 527 U.S. 263, 282 n. 24 (1999). Alternatively, a claim is reviewable despite procedural default under the "fundamental miscarriage of justice" exception if a petitioner can show that "the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Petitioner has not made any argument to excuse the default, and the Court can discern no colorable grounds for excuse from the record. *See Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014) (noting that where petitioner had failed to make any argument to excuse default, the court "will not make it for him").

Because Petitioner failed to raise his second ineffective assistance claim before the state courts and has made no excuse for this failure, his claim is procedurally defaulted and unavailable for habeas review.

CLAIM 2: FAILURE TO INSTRUCT JURY ON LESSER INCLUDED OFFENSE

Petitioner's next claim alleges that his "5th, 6th, and 14th Amendment rights" were violated when the trial court declined a defense request that the jury be instructed not only on the charged offense of aggravated hijacking, but also on the lesser included offense of possession of a stolen vehicle. (Pet. Habeas Corpus, Dkt. # 1 at 5.) Putting aside the government's argument that there is no constitutional right to instruction on lesser included offenses in a non-capital case, it is apparent from the record that Petitioner's claim is procedurally defaulted.

While Petitioner did object to the trial court's jury instruction ruling on direct appeal and in his initial PLA, he alleged only that the lack of a possession of a stolen vehicle instruction violated state – not federal – law. (Gov't Ex. A, Pet'r's Appeal Br., at 10) (relying exclusively on Illinois court cases to show "the proper test of what constitutes a lesser included offense for purposes of an instruction request"); (Gov't Ex. E, Pet'r's PLA, at 8-12) (arguing only that appellate court's rejection of this claim violated Illinois law regarding the standard of review relevant to jury instructions). In order to fairly present a federal constitutional claim to a state court, a habeas petitioner must "alert[] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner failed to do so; he alleged only that his jury instruction claims violated Illinois law, and the Illinois courts accordingly applied only state law standards in ruling on this claim. The state courts had no opportunity to rule on Petitioner's claim that the

lack of a possession of a stolen vehicle instruction amounted to a *federal constitutional* violation. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (noting that AEDPA requires that a state have an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights") (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Petitioner's second claim is therefore procedurally defaulted.[3]

CLAIM 3: INSUFFICIENCY OF THE EVIDENCE

Finally, Petitioner argues that the state failed to prove his guilt beyond a reasonable doubt because "there was a single identification witness, and that witness's testimony was so rife with contradictions...that it cannot support a valid conviction." (Pet. Habeas Corpus, Dkt. # 1 at 6.)

The question a court applies in ruling on a sufficiency of the evidence challenge is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana,* 406 U.S. 356, 362 (1972). Here, there can be no doubt that a rational trier of fact could have found Petitioner guilty of aggravated carjacking. Even putting aside the identification testimony that Petitioner attempts to discredit, there was evidence from which a jury could be convinced of Petitioner's guilt. Petitioner was arrested *in* Carter's stolen car, with the keys in his possession. His sister testified that she learned Carter's phone number from Petitioner and called Carter to discuss the case, from which testimony the jury could infer that Petitioner was involved in the earlier attempts by an unknown female caller to ransom Carter's car. Finally, he was arrested near the location at which that anonymous caller proposed to conduct the exchange. This

---

[3] As with Claim 1(b) discussed above, Petitioner advances no argument that this default should be excused and none is apparent from the record.

evidence alone would suffice to prove Petitioner's guilt beyond a reasonable doubt, even if no identification evidence were presented.

Moreover, the Seventh Circuit has made clear that under at least some circumstances, the "testimony of a single eyewitness suffices for conviction." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). Petitioner fails to identify what – if any – purported inconsistencies in Carter's testimony would have rendered his identification of Petitioner so suspect that a reasonable jury could not have credited it. The only alleged inconsistencies mentioned by the Illinois Appellate Court were Carter's inability to remember what direction the carjacker was walking prior to the theft and his conflicting statements to the 911 dispatcher about his location. (Gov't Ex. D at 14.) The court found these infirmities trivial in light of Carter's "face-to-face encounter in a well-lit gas station with someone standing close enough to him to put a 9mm against his back." (*Id*. at 15.) This decision by the state appellate court was not objectively unreasonable, and as such Petitioner is not entitled to habeas relief on Claim 3.

CERTIFICATE OF APPEALABILITY:

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, a district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant." A certificate of appealability "may be issued only if the prisoner has at least one substantial constitutional question for appeal." 28 U.S.C. § 2253(c)(2). For the reasons stated above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, because he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition

adequately shows a sufficient chance of the denial of a constitutional rights that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue Petitioner a certificate of appealability.

## **Conclusion**

For the reasons set forth above, the Court denies Petitioner's § 2254 motion. Moreover, because he has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). This case is terminated.

**SO ORDERED.**  ENTERED:  March 23, 2015

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**